### Ex parte C. P. TORRANS et al.

No. A-1140.    Opinion Filed October 28, 1911.

(118 Pac. 414.)

BAIL—Right to Bail—Evidence—Manslaughter. For facts which could not amount to more than manslaughter for the act of son in killing in defense of his father, see opinion.

(Syllabus by the Court.)

Application by C. P. Torrans and W. P. Torrans to be admitted to bail. Application granted.

*S. M. Rutherford* and *J. G. Harley,* for petitioners.

*John W. Robertson,* Co. Atty., for the State.

FURMAN, P. J.   The evidence in this case is very meager as to the cause or origin of the difficulty which resulted in the death of Sam Baker, for which the applicants are now held. From the best we can gather from the record, Will Torrans, one of the applicants, had brought suit against Sam Baker, the deceased, on an open account. This had angered Baker. On the

Saturday before the fatal difficulty, both of the applicants and Sam Baker were in the town of Checotah, in McIntosh county, Okla. Mr. C. P. Torrans was standing on the street talking to Mr. John McCaughn, a witness in the case, when the deceased stepped up between the witness and C. P. Torrans and said to him, "Mr. Torrans, you started something you are not going to get off with," and also said, "Will Torrans is a damned dog, ain't he?" to which C. P. Torrans replied, "I don't know that as he is." Deceased, Sam Baker, had hold of C. P. Torrans during this time. Will Torrans, a son of C. P. Torrans, then came up and struck Sam Baker, and a fight ensued between Baker on one side and the Torranses on the other.

On the day of the killing the deceased, Baker, and his two sons and his son-in-law, were in the town of Checotah, and according to the affidavit of J. J. McGill the following occurred:

"'That on the 7th day of October, 1911, I was standing near a popcorn stand at the east side of Moncrief & McClain's hardware store, in Checotah, Okla., with my brother, eating popcorn, when Will Torrans came up and went to eating some with me. Then he bought a sack of popcorn, and about that time he says to me, 'Those boys are after me, Joe, and I don't want to have any trouble with them.' They were pointing toward us, then turned and walked off across the street to a shooting gallery. The boys referred to above are Carlile Freeman and Will Mike Baker. When they got to the shooting gallery, they met Sam Baker, and had a short conversation with him, and pointed up toward where we were standing. When they did this Will Torrans says, 'Let's walk up the street, Joe; those fellows are coming after me, and I do not want to have any trouble with them.' We walked to the corner of the First National Bank, and stood there and talked until they walked up and passed by Will, and this Freeman boy walked around us then, and he stepped up suddenly and without a word, and struck Will Torrans. Will Torrans then turned and ran, and Carlile Freeman took after him—hit him in the back of the head as he ran. Some one about that time hollered, 'Kill him, pa; kill him!' Sam Baker was down east of us where the row started, in front of the hamburger stand, and as Carlile Freeman was chasing Will Torrans down the street, and they passed Sam Baker, and he and Will Mike Baker took in after them, and they chased Will on down the

street 15 feet, and then Will Torrans run into the hardware store, and old man Torrans came running up, and, as he started by Sam Baker, Sam Baker knocked him down and hit him several licks. I had gotten then within 4 or 5 feet of where they were fighting, and Will Torrans shoved the door open and fired. Baker was fighting old man Torrans at the time he fired. He was stooping over old man Torrans when Will Torrans fired the shot from the door."

Sid Nichols filed an affidavit in this case, which is as follows:

"I was on the street there the day Sam Baker was killed. I saw Will Torrans and C. P. Torrans that day; also saw Sam Baker. I saw Will Torrans with a gun in his hand, and heard a report, and heard Baker say, 'I am shot.' Just then C. P. Torrans fired his gun, but shot up in the air, and did not shoot Baker. He was standing about 8 feet from Baker when he fired. There were only two shots fired. A few days before the killing of Baker, I heard Baker say to his son and his son-in-law that the Torranses had him bested in the fight they had had on that day, but that he (Baker) would get them yet. On the day of the killing of Baker, I saw him about 20 or 30 minutes before he was killed, and heard him ask his son-in-law if he had his gun with him, and he replied that he did not, but was going to get one, and Baker told him to do so. There were three of the boys there, two of Baker's sons and his son-in-law. Baker appeared to be very nervous."

T. J. Stout filed the following affidavit in behalf of applicants:

"T. J. Stout, of lawful age, being first duly sworn, on oath says: I am a constable in McIntosh county, Okla. That I knew Sam Baker in his lifetime. I know C. P. Torrans and Will Torrans. I made the arrest of C. P. Torrans and Will Torrans, when they were charged with killing Sam Baker. I at that time, at the request of C. P. Torrans, examined the wounds on his head, immediately after the killing. I found as many as three bruises on the head of C. P. Torrans. They were red and bleeding, and were very severe. I also at the same time examined his hat, and found one hole about 1½ inches, on the side of the crown, which had been made with some instrument. The hole in the crown, as to location, corresponded exactly with the wound on the head of Torrans. I heard Sam Baker, two weeks before he was killed, say that he intended to kill Will Torrans. One

week before the killing he made the same threat, repeating what he·said, before. On the afternoon before· Baker was killed, I communicated these threats to Will Torrans. Torrans stated to me that he would stay off the street as much as possible, and that if he had known that it would have caused trouble, he would not have sued him. Sam Baker had the reputation of being a very dangerous man. His reputation as a fighter, and a man who would kill, was very well known over this country."

H. B. Reubelt filed the following affidavit:

"On the day of the alleged killing of Sam Baker, shortly after 4 o'clock in the afternoon, I was standing upon the steps of the First National Bank in the town of Checotah. I noticed that the defendant Will Torrans was standing two or three feet from me on the pavement, and appeared to be talking to one or two gentlemen. All at once a person, bareheaded and with a quantity of black hair flowing, appeared to run around the corner of the bank and began to strike defendant Will Torrans over the head with both his fists with a kind of overhanded motion of the arm. He was running rapidly, and he struck his blows rapidly, and drove defendant Will Torrans before him, so that in a few seconds they both had disappeared from my view in the dense crowd that was then upon the pavement. In about a minute, as near as I can judge, I heard a shot, and in about a quarter of a minute I heard a second shot, and then a short time thereafter the two defendants passed me and went into the First National Bank, where I saw them disarmed."

R. A. Coad filed the following affidavit:

"I was standing right at the south end of the First National Bank on the sidewalk, and Will Torrans and some man were running and fighting. The man was hitting Torrans over the head with both fists as he ran along east, and they ran about 15 feet. below the hardware store door, and Will Torrans fell, or the fellow knocked him down, and he came running back, and run in at the door, and about that time old man Torrans and Sam Baker was there fighting, or Sam Baker was hitting old man Torrans in the face in front of the hardware store, about three feet from the door that Will had gone in through to the hardware store. Sam Baker had old man Torrans knocked back in a reclining position against the glass window, and was hitting him in the face. Sam Baker turned to the left and stopped right in front of the door in a stooping position, and just as he stooped Will Torrans pushed the door open and fired. Baker

turned and walked off, and in a few seconds I heard another shot fired west from me on the street. Some fellow began hollering, 'Don't do that!' and I stepped back into the hardware store, and turned right around and stepped out, and when I came out Sam Baker was standing with his hands on the southeast corner of the hamburger stand there, and a gentleman walked up there and brought him in."

A. C. Naron filed the following affidavit:

"I am a resident of McIntosh county, Okla., and am in the mercantile business in Checotah. I have lived in this county for several years, and knew Sam Baker in his lifetime, and knew his general reputation as a fighting man. He was regarded as a very dangerous man at times."

J. W. Steen, who represents McIntosh county in the Legislature, filed the following affidavit:

"My name is J. W. Steen, and my post-office address is Checotah, Okla. I have resided in Checotah, and in what is now McIntosh county, Okla., for the past 25 years. That during the past 10 years I have been personally acquainted with Sam Baker, until his recent death. I am well acquainted with the reputation Sam Baker bore in this county, as a law-abiding citizen, and I know that reputation was very bad; he being regarded as a very dangerous man, and a man who would kill at the slightest provocation. He was known the county over as a bad man. He was lawless and reckless, and had but very little regard for other men's rights, when the least contrary to his opinion."

It is a significant fact that, although the state placed a number of witnesses on the stand, none of them could give an account as to just how this trouble occurred, or what the deceased, Sam Baker, was doing at the time he was shot. There is nothing in the state's evidence to contradict the statements contained in the affidavits filed in behalf of the applicants. On the contrary, all the testimony in this case is consistent with these affidavits. Upon this testimony we do not think that the offense amounts to more than manslaughter, and we believe both of the applicants are clearly entitled to bail. Confessedly the fatal shot was fired by Will Torrans. If he had been assaulted on the street and knocked down, as the testimony shows he had been assaulted and knocked down, by the son-in-law and the son of the deceased Baker, and

while still suffering from the intense excitement of this assault he fired the fatal shot, he could not have been in that frame of mind which is necessary to constitute murder. See *Ex parte Smith,* 2 Okla. Cr. 24, 99 Pac. 893. Having heard of the threats of the deceased, Baker, to take his life, and the life of his father, in connection with the general reputation of the deceased as a dangerous man, if he saw the deceased, Baker, knock his father down, and standing over him, and continuing the assault, and he fired in defense of his father, if not entirely justifiable, he could not be guilty of more than manslaughter. If a son cannot defend his father under these circumstances, when would he have a right to defend him? To deny such right would be revolting to justice and in utter disregard of the most sacred ties of human nature. There is no law which requires a son to act the part of a contemptible coward and base counterfeit upon true manhood's coin, when he sees his father in imminent danger of receiving serious bodily injury; but he may act in his defense instantly, with the most deadly and effective weapons at his command, provided only that he acts in good faith and upon reasonable appearances of danger. We are more than convinced of the correctness of our views by the fact that neither of the sons nor the son-in-law of the deceased, who were present at the time of the homicide, were placed upon the witness stand by the state.

Section 2290 of our Penal Code (Comp. Laws 1909) is as follows:

"Homicide is also justifiable when committed by any person in either of the following cases: 1. When resisting any attempt to murder such person, or to commit any felony upon him or her, or upon or in any dwelling house in which such person is; or, when committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished; or, when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace."

"The right of self-defense in cases of this kind is founded on the law of nature, and is not, nor can be, superseded by any law of society." (*West v. State,* 2 Tex. App. 476.)

What we have said in this opinion is based upon facts now before us. It may be that upon the final trial of this case evidence may be introduced which will change the question involved. We believe that in every case of homicide there should be a final trial before a jury.

We find upon the evidence before us that both of applicants are entitled to bail. The bond of William Torrans is placed at $5,000, and C. P. Torrans at $2,500, to be approved by the sheriff of McIntosh county, Okla.

ARMSTRONG and DOYLE, JJ., concur.